## Pittsburg Brewing Company's Brewer's License. Davis's Appeal.

*Brewer's license—Jurisdiction, Q. S.—Interest of applicant in other breweries—Statutes—Acts of 1891 and 1897.*

Under the Act of July 30, 1897, P. L. 464, the court may legally grant a brewer's license although the applicant may be interested in another brewery in the same county. The power to grant a brewer's license is not taken away from the court of quarter sessions and given to the state treasurer under the said act.

An interest in a brewery is not within the purview of the clauses of the petition required by the act of 1891 relative to other places where liquors are sold or kept for sale; and however these clauses may be construed the act of 1897 authorizes the grant of more than one brewery license to the same person by the court of quarter sessions, and to this extent repeals them if they are inconsistent with this provision of the late act.

The authority given the state treasurer to issue a qualified license cannot be viewed as a repeal of the act of 1891 as to brewers; it operates rather in the nature of a proviso, and leaves unaffected the jurisdiction given to the quarter sessions by the Act of June 9, 1891, P. L. 257.

Argued October 3, 1899. Appeal, No. 6, April T., 1900, by Lyman E. Davis, from order of Q. S. Allegheny Co., March Sess.,

1899, No. 9, granting a brewer's license.   Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and BEEBER, JJ. Affirmed, Per Curiam, by divided court.   Opinion by SMITH, J. RICE, P. J., ORLADY and BEEBER, JJ., dissent.

Application for brewer's license.   Before SHAFER, J.

It appears from the record that the petition of the Pittsburg Brewing Company was filed February 11, 1899, for a license for a brewery in the sixteenth ward of the city of Pittsburg; the petition alleged the incorporation of a brewing company and that its directors were all citizens of Pennsylvania and the United States, of temperate habits and good moral character; that the petitioner was the owner of the premises to be licensed; that the petitioner was not in any way pecuniarily interested in the profits of the business conducted at any other place in said county wherein the said liquors are sold or kept for sale, and would not be during the term of said license except in the event of the granting to the petitioner of the following brewers' licenses applied for at March sessions, 1899, for the following breweries (reciting certain other breweries in the county of Allegheny, owned by the petitioner, licenses for which said officers apply for).   Remonstrance was filed by Lyman E. Davis. At the hearing of the petition and remonstrance the court below sustained the objections of the petitioner to certain offers of evidence made by the remonstrant, which offers included, inter alia, the following:

[Evidence of the charter book of the Phœnix Brewing Company, showing its incorporation for the purpose of manufacturing and brewing malt liquors, to be followed by evidence that the Phœnix Brewing Company under its said charter was a corporation in business in the city of Pittsburg, Allegheny county, engaged in the manufacture and brewing of malt liquors; that the Phœnix Brewing Company, together with seven other incorporated brewing companies of Allegheny county, and eight brewing firms or individuals, sold their brewing properties, stock and possessions to the Pittsburg Brewing Company and became merged and combined with it, to be followed by evidence that the Pittsburg Brewing Company subsequent to its incorporation procured the combination of eight brewing corporations of Allegheny county and seven brewing firms and individuals of

Allegheny county to sell their brewing properties, stock and plants to the Pittsburg Brewing Company, taking stock in it for the purpose of effecting a combination of brewing corporations and firms and individuals of the county of Allegheny and in adjoining counties to prevent competition in the manufacture and brewing of beer. This for the purpose of showing that the petitioner, by reason of said combination and conspiracy against trade and the people of Allegheny county and adjoining counties, is conducting an unlawful business under its said charter; is misusing and abusing its corporate rights and powers, and is unfit to be licensed by this court upon its present applications, because to license the Pittsburg Brewing Company would enable it to carry out this unlawful combination against trade and public policy in the county of Allegheny and adjoining counties.] [3]

The court below granted the application in this case in the following opinion, order and decree:

[The Pittsburg Brewing Company is the owner of thirteen breweries, at as many different places in the county, and has made a separate application for a brewer's license for each of said places, by petitions which conform to the requirements of section 4 of the Act of June 9, 1891, P. L. 257, except that necessarily the sixth paragraph of the respective petitions adds to the declarations that the applicant is not interested in the profits of the business at any other place in the county, an exception of the other twelve breweries owned by it.

It is claimed by the remonstrants that the admitted interest in other breweries in the county is fatal to the application.

It was held by this Court in the case of Lutz's License, 1 Pa. Dist. Rep. 306, that but one brewer's license could be granted any person in the same county, and as the legislation on the subject then stood, this, we think, was correct.

Since that case was decided there have been two acts passed in regard to brewers' licenses. The first is that of June 21, 1897, P. L. 176. The first section of this act provides in effect that the state treasurer shall issue a certificate, which amounts to a license, to brewers, upon payment of the sum of $1,000 for each brewery operated by them, the sale under such license being restricted to dealers licensed by the court.

The second section provides that nothing in this act shall prohibit the brewer from obtaining a license to sell at wholesale as provided by law.

The effect of this act was to provide a new and additional method by which a brewer might be licensed to operate a brewery, and permits him to operate as many breweries as he is willing to pay the prescribed fee for to the state treasurer.

The last act on the subject is that of July 30, 1897, P. L. 464, the title of which is " An act to provide revenue and regulate the sale of malt, brewed, vinous and spirituous liquors, or any admixture thereof, by requiring and authorizing licenses to be taken out by brewers, distillers, wholesalers, bottlers, rectifiers, compounders, storekeepers and agents having a store, office or place of business within this commonwealth, prescribing the amount of license fees to be paid in such cases," etc.

It will be observed that this act does not purport to be merely a revenue bill, fixing or changing the amount of the license fees to be paid, but, so far as its title shows, might be taken for a complete system of licensing all dealers except retailers.    The first section provides for a sliding scale of fees, and re-enacts the first section of the act of June 21, 1897, with the proviso that no fee paid to the state treasurer shall be less than that required by the sliding scale.

The third section provides that any person intending to apply for a license under this act of assembly shall file with the clerk of the quarter sessions his petition, three weeks before the session at which the same is to be heard.    And the fourth section repeals the first section of the act of 1891.

It must be admitted that the last act is somewhat confused. No interpretation of it by the appellate court has yet been reached.    The opinion of the learned judges of the court of quarter sessions of Philadelphia, in the application of the Consumers' Brewery Company, 7 Pa. Dist. Rep. 193, has been called to our attention.    So far as appears by that opinion the question before us does not appear to have been distinctly raised. The question there discussed is stated to be whether a brewer can have a license for more than one brewery and one wholesale store.

The acts of June 21, 1897, and July 30, 1897, are quoted, showing that brewers are to pay for each brewery $1,000, etc.,

and the conclusion is then drawn that the applicant has "a lawful right to own and operate more than one brewery and have a license for each separate brewery so operated."

This conclusion is not a difficult one, but the question as to whether the court of quarter sessions, as well as the state treasurer, is empowered to issue the licenses is not discussed, and that is the only question before us.

We have been furnished with proof that the courts of quarter sessions of the counties of Philadelphia, Lackawanna and Westmoreland have granted licenses to brewers to operate more than one brewery in those counties, and it appears that in none of the counties of the state has such an application yet been refused since the act of 1897.

In addition it appears by the record that the applicant was granted transfers from the former owners of the several breweries now applied for by this court at its last session. The granting of these transfers was a decree of this court involving the question now presented and deciding it in favor of the applicant.

If the matter were res integra we should have been inclined to hold that the act of 1891 allows of but one license to a brewer for a brewery; that the act of June 21, 1897, provides a concurrent system of licenses by the state treasurer, for any number of breweries, but confining the sales to licensed dealers and not requiring any particular qualifications in the applicant; that the act of July 30, 1897, changes the license fees to be paid under each method, but leaves each intact so far as the grant of power to issue licenses is concerned, and that, therefore, the court is not empowered to grant a license for more than one brewery.

The matter has, however, been passed upon by this court. The applicant has received transfers of licenses for breweries of great value and acted upon the faith of those proceedings. We should, therefore, not feel justified, even if our opinion of the meaning of the acts were more decided than it is, in refusing to grant the licenses; although there is nothing that we can see to prevent the applicants from procuring licenses at any time from the state treasurer, unless it is that they are not content to have the right to sell to licensed dealers only, but wish to sell to private persons.

The interest of the public, however, not to have the licenses granted, if any such exists, is by no means equal to the injury which would be done by a refusal upon legal grounds which might prove erroneous.  This we deem an additional reason, entitled to some weight at least, in determining us to adhere to the decision of the court already made.

The licenses will be granted as prayed for.

To which opinion and decree of the court counsel for remonstrant excepts, and at his instance bill of exception is sealed.]  [5]

The court below granted twelve brewers' licenses and remonstrant appealed.

*Errors assigned* among others were (1) in granting the appellee a brewer's license.  (2) In granting the appellee a brewer's license on the petition filed, the same not being in conformity with the statute restraining and regulating the sale of vinous, spirituous, malt or brewed liquors, or any admixture thereof, at wholesale, and is fatally defective in admitting a pecuniary interest.  (3) In sustaining the objection of appellee to offers of evidence, which is set out in the statement of facts.  (5) In granting the application in this case, in its opinion, order and decree and bill of exceptions thereto, reciting same.

*John Marron*, of *Marron & McGirr*, with him *Edwin A. Lawrence*, for appellant.—The power of the court below to grant a brewer's license was given, limited and regulated by the Act of June 9, 1891, P. L. 257.

The act of June 9, 1891, creates a system of wholesale license by the court substantially similar to the Act of May 13, 1887, P. L. 108, providing a system of retail license by the court.

There is no warrant in the law for a distinction between the discretion of the court under the retail and wholesale license acts.

The power to grant liquor licenses is limited by the statute giving it.

The application must conform to the provisions of the statute under which it is made : Kilmenski's License, 164 Pa.. 231.

This petition is jurisdictional.  To conform to the statute, it must contain a statement verified by affidavit that the appellee

is not pecuniarily interested in the profits of the business at any other place in Allegheny county where vinous, spirituous, or malt liquors are sold or kept for sale. A petition, therefore, that does not contain such a statement does not conform to the act of June 9, 1891, is materially defective and cannot entitle the applicant to a license, and the license granted on it is void for want of jurisdiction in the court to grant, because the act has specified the conditions on which the applicant may secure a license and the court grant it.

If several licenses were grantable to the same applicant there would be no need of this exception. The exception expressed in the statute necessarily excludes all others : Oliver's Appeal, 101 Pa. 299. But one license can be granted to the same person as brewer : Lutz's License, 1 Pa. Dist. Rep. 306.

If there is a limitation on the power of the court to grant but one license, and on the applicant to secure but one brewer's license under the act of June 9, 1891, is this limitation removed or is the jurisdiction of the court affected by the acts of June 21, 1897, and July 30, 1897 ?

This statute permits a brewing individual, firm or corporation, operating one or more breweries, to sell to dealers licensed by the courts the malt liquors manufactured at those breweries on the payment of $1,000 into the state treasury for each brewery and the issue of a certificate of such permission by the treasurer for each brewery. This act is purely a revenue act, and is not intended to restrain or regulate the sale of brewed liquors. Its object expressed in its title and provisions is entirely different from that of the act of June 9, 1891. The power to grant or issue the certificate of license is given to the state treasurer, and to no other person or tribunal.

The authority of the state treasurer to issue the certificate is exclusive of the court of quarter sessions, for it is a " duty enjoined by an act of assembly and the provisions of the act must be strictly pursued." This act provides no procedure; no petition is needed; neither publication of application, nor time for hearing is directed.

A statute can be repealed only by express provision of a subsequent law or by necessary implication. To repeal by implication there must be such a positive repugnancy between the new law and the old that they cannot stand together, or be con-

sistently reconciled: Homer v. Com., 106 Pa. 221; Sifred v. Com., 104 Pa. 179.

If the act of June 21, 1897, changes the law with reference to the number of brewing licenses the same person may obtain, it creates a new jurisdiction to grant them and takes the jurisdiction from the courts.

If two statutes can stand together, the latter does not abrogate the former. The whole course of legislation is to be construed so that every part and word shall have its effect if it consistently can, and the will of the legislature be completely executed: Erie v. Bootz, 72 Pa. 196.

The acts of 1891 and 1897 created two systems of brewer's license independent of each other, uncontrolled by and consistent with each other.

If the words " each separate brewery " in the 1st section of the act of July 30, 1897, mean the license of more than one brewery to the same applicant, then they have plain reference to the section directing the state treasurer to issue a certificate for each separate brewery on payment of the fee, and have no reference to grant of a brewing license by the court. Where a clear statutory power is given to a court to administer a police regulation so needful to the community as the restraint of the liquor traffic it cannot be taken away by words of doubtful import. The provision in the act of July 30, 1897, " that any individual, firm or corporation, operating more than one brewery, shall pay for each separate brewery," has reference to the right to sell the liquors brewed at each separate brewery licensed under the acts of 1897 by the state treasurer, and has no reference to a brewing license granted under the act of June 9, 1891.

The whole course of legislation is to be so construed that every part and word shall have its effect, if it consistently can, and the will of the legislature be completely executed: Erie v. Bootz, 72 Pa. 196.

We contend, therefore, that the jurisdiction of the court to grant a brewer's license, is given by the act of June 9, 1891, and that the court's jurisdiction is limited to the grant of one brewing license to the same person.

We contend, therefore, in the language of the court below in the opinion filed, " that the act of 1891 allows of but one license to a brewery; that the act of June 21, 1897, provides a

concurrent system of licenses by the state treasurer, for any number of breweries, but confining the sales to licensed dealers, and not requiring any particular qualifications in the applicant; that the act of July 30, 1897, changes the license fees to be paid under each method, but leaves each intact so far as the grant of power to issue licenses is concerned, and that therefore the court is not empowered to grant a license for more than one brewery."

*D. T. Watson*, with him *C. A. Fagan* and *A. M. Neeper*, for appellee.—This court has before it but one question : Do the several acts authorizing the granting of license in Pennsylvania, and now in force, give the court authority to grant licenses to one individual or corporation for two or more breweries ?

The question of the power of the court below may be raised on certiorari : In re Pollard's Petition, 127 Pa. 507 ; Johnson's License, 156 Pa. 322.

The discretionary exercise of an admitted power in the court to grant or refuse the license cannot be reviewed, unless arbitrarily exercised : Kilmenski's License, 164 Pa. 231 ; Raudenbusch's Petition, 120 Pa. 328.

Under these cases this court will not review the discretionary exercise of an admitted power, but solely the question of the existence of the power.

We submit that a full examination of the legislation on this question gives but one result, and that is to affirm and demonstrate the existence of the power.

We have seen that section 1 of the act plainly contemplates the granting of licenses for more than one brewery.    If section 4 is held to deny such right, here would be a plain conflict, and one section must fall.

To avoid that conflict is the duty of the court, and hence you will give to section 4 such a construction, as, while not inconsistent with its words, will enable both section 1 and section 4 to stand : Sutherland on Statutory Construction, sec. 239.

But the question here disputed, of the authority of the court to grant licenses to one applicant for more than one brewery, is still further shown by the Act of July 30, 1897, P. L. 464.

All the provisions of the act of 1891 which were inconsistent with the act of 1897 were repealed by the act of 1897.

Words could not be plainer to indicate the legislative intent that licenses could be issued to the same applicant for more than one brewery.

Section 1 of the act of 1891 is repealed, and section 1 of the act of 1897 takes its place, and you, therefore, read the act of 1891 as if the first section of the act of 1897, which includes the declarations last above cited, was in the act of 1891.   Read thus, as we have seen, the legislative intent that the courts might grant more than a license for one brewery is plain; indeed, even plainer than under the words of the act of 1891, which we have already considered.

The 4th section of the act of 1897, besides repealing section 1 of the act of 1891, adds : " And all other acts or parts of acts, general or special, inconsistent herewith be and the same are hereby repealed."

Is there any other legislation in Pennsylvania which will enable the court to determine whether the policy of the state was to restrict each brewer to one brewery?   There is : Act of June 21, 1897, P. L. 176.

Here the legislature speaks of an individual or corporation operating " more than one brewery " and requires him to pay " for each separate brewery so operated."

From a review of all these acts is not the general intent of the legislation apparent, i. e., not to restrict brewers to one brewery, but to require for each brewery a separate license and to give to the court jurisdiction to grant more than one license for one brewery to any one individual or corporation ?

If this is the plain general intent of these acts of 1891 and 1897, as we have seen it is, even apparently conflicting paragraphs or sections of these acts would be so construed as to harmonize with the general intent: Com. v. Conyngham, 66 Pa. 99.

In Lutz's License, 1 Pa. Dist. Rep. 306, Judge SLAGLE, in 1892, ruled that the act of 1891 only authorized a license for one brewery.   He placed his decision on the words of section 4 of the act of 1891, which we have hereinbefore considered, and we respectfully submit that he overlooked the general intent of the act and his duty to reconcile even conflicting sections, so that all the words may have their appropriate meaning.   He thus allowed inferences he drew from section 4 to control the plain language of section 1, and he overlooked the fact that the

thing prohibited in section 4 was not the interest in other brew-- eries, but interest in the retail business of selling the product..

The next decision is the Consumers' Brewing Company, 7 Pa.. Dist. Rep. 193.

In that case Judges BIDDLE and ARNOLD of Philadelphia held that under the legislation as it existed in 1898, when that decision was made, an applicant for a brewery license is not. restricted to a single brewery, but it may have two or more.

This court will not assume to discuss the correctness of the result reached by the court below.   This Court, in Donovan s. License, 9 Pa. Superior Ct. 647, directly ruled that the evidence was not brought up by the appeal: Lauch's App., 2 Pa. Su-- perior Ct. 53; Com. v. Kerns, 2 Pa. Superior Ct. 59; In re Ap- plication of Doylestown Distilling Co., 6 Pa. Superior Ct. 87; Donoghue's License, 5 Pa. Superior Ct. 1; Doberneck's Appeal, 1 Pa. Superior Ct. 637.

In all these cases the same doctrine was held, and in Reed's. Appeal, 114 Pa. 452, it was held that neither the petition nor remonstrance was part of the record.

If the certiorari does not bring up the evidence it would not bring up the offers of evidence refused, and therefore the third and fourth assignments of error should not be considered.. The act of assembly under which this proceeding was had did. not give an appeal to review the discretion of the court below in the question of receiving or rejecting evidence; and the certiorari, as we have seen, brings up only the record.

PER CURIAM, December 13, 1899:

The six judges who heard this appeal being equally divided. in opinion the order is affirmed.

OPINION BY SMITH, J., December 13, 1899:

It is unnecessary to consider the specifications relating to offers of evidence.   These offers form no part of the record, and are not before us.   The findings of fact by the court below are beyond review by us.   The only question to be determined here is whether, in law, the court had authority to make the decree.   The denial of this authority, by the appellant, rests on the contention that the court cannot legally grant a brew- er's license if the applicant is interested in another brewery in

the same county, and further, that the power to grant a brewer's license is taken away from the court of quarter sessions and given to the state treasurer by the Act of July 30, 1897, P. L. 464.

In none of the legislation on this subject is there express prohibition of a license under the circumstances here existing, nor express provision for it.   The appellant, however, contends that a prohibition is implied in the following clauses of the petition required of the applicant by the Act of June 9, 1891, P. L. 257 :

" 6. That none of the applicants are in any manner pecuniarily interested in the profits of the business conducted at any other place in said county where any of said liquors are sold or kept for sale, excepting those engaged or interested in the distilling or brewing business, who shall not be debarred from obtaining a wholesale dealer's license under this act by reason of their interest in any distilling or brewing business.

" 7. That none of the applicants are in any manner pecuniarily interested in the profits of the business conducted at any other place in said county where any of said liquors are sold or kept for sale, but the ownership of stock in an incorporated company distilling or brewing said liquors shall not debar the owner thereof from obtaining a license under this act."

In construing these clauses, we must consider their purpose, the mischief at which they are aimed and the remedy which they provide, and, to carry out the legislative intent, so construe them as to suppress the mischief and advance the remedy. Not infrequently, to give full effect to a remedial provision, a broader or a narrower significance must be imputed to the statutory language than its ordinary meaning would imply.   As was said by the Supreme Court in Umholtz's License, 191 Pa. 177, " All legislation, especially that which relates to proceedings in the courts, is of a broader and more comprehensive scope, and is couched in more generic language, than is employed in the drafting of private contracts, and requires an interpretation conformable to its general purpose.   Thus statutes are to be so construed as best to effectuate the intention of the legislature, though such construction may seem contrary to the letter."

Previous to the passage of this act, the retail liquor traffic was largely promoted by the practice, on the part of brewers,

of supplying the means for opening eating houses, and sharing in the profits.   In not a few instances, brewers owned and conducted eating houses, and to permit this the Act of April 20, 1858, P. L. 365, contained a proviso that the act should not be construed to prevent a brewer, otherwise qualified, from receiving an eating house license.  This artificial stimulus to the retail traffic was the mischief which the clauses quoted were designed to remedy.   To this end, with certain exceptions, they restrict the licenses for which they provide to persons not " pecuniarily interested in the profits of the business conducted at any other place in said county where any of said liquors are sold or kept for sale."   The exceptions permit a distiller or brewer to obtain a wholesale dealer's license, and an owner of stock in a distilling or brewing company to obtain any license provided for by the act.

We regard the restrictive terms of the act of 1891, however, as limited to places where liquors are " sold or kept for sale," as distinguished from places where they are manufactured. Had the intention been to include the latter, we might fairly expect it to be clearly stated, and it could have been readily and fully expressed by the use of the word " manufactured," preceding the word " sold."   The omission of even this word is significant.   Places where liquors are retailed alone fall within the mischief which these clauses were designed to remedy.   This is recognized in the exception permitting wholesale licenses to brewers and distillers.   The obvious purpose was to cut up by the roots the manufacturer's interest in the retail traffic.   The interest of a manufacturer in more than one manufactory in no way interferes with this purpose, so long as an interest in retail sales is denied him.   There is an obvious recognition of this in the exceptions to the seventh clause.   By any other construction of the restrictive language of the act and its exceptions, every stockholder in a licensed brewing company may have also a license for a separate brewery, distillery, wholesale, bottling, rectifying or compounding establishment, while the entire body of stockholders, in their corporate capacity, cannot have a license for a second brewery.   In our view, a situation so anomalous, and so devoid of effect on the mischief to be remedied, cannot have been within the legislative intent.

The effect of the act of 1897 remains to be considered. The 1st section of this act provides that " All wholesale dealers, brewers, distillers, rectifiers, compounders, bottlers, storekeepers, or agents, having stores or offices within this commonwealth, dealing in intoxicating liquors, either spirituous, vinous, malt or brewed, shall pay for the use of the commonwealth, for each separate store, brewery, distillery, rectifying, compounding or bottling establishment or agency, an annual license fee," etc. It is contended by the appellee that in thus requiring an annual license fee for " each separate store, brewery," etc., the act gives a right to as many separate breweries as the court may think proper to license.

Whether this language, viewing it only as here employed, is used to distinguish merely the separate classes of establishments to be licensed and the separate establishments of different applicants, or separate establishments of a single applicant, or both, does not, indeed, readily appear. A comparison, however, with previous enactments on the same subject, and with the same language used elsewhere in the same act, will assist in reaching a conclusion. The Act of April 10, 1849, P. L. 570, sec. 31, providing for the licensing of distilleries and breweries, directed a classification on the basis of annual sales, and required " all distillers and brewers to pay annually, for the use of the commonwealth, for their respective licenses," the fees therein fixed. Through all modifications of the law on this subject, until 1887, this language remained unaltered, and during that period it was assumed, in practice, that it authorized but one license to an applicant. The Act of May 24, 1887, P. L. 194, however, introduced a change of phraseology, which was followed in the acts of 1891 and 1897, and which, the appellee contends, authorizes more than one brewery license to the same applicant. Instead of following the act of 1849, in requiring all brewers, distillers, etc., to " pay for their respective licenses " the specified fees, the later acts provide that they shall pay an annual license fee " for each separate store, brewery," etc. It is not to be presumed that this change was made unadvisedly, or without purpose ; and its only conceivable purpose is to express the legislative intent that as many separate licenses may be granted to any applicant as to the court may seem proper. But whatever meaning may be attributed to this language as it appears in the first

sections of the acts of 1887 and 1891, we are to construe it as it is employed in the act of 1897, by which those sections are repealed or superseded. The first section of this act opens with the provision already quoted, for an annual license fee for, inter alia, "each separate brewery." It next fixes a classification. It then provides that any brewer, upon paying the requisite fee into the state treasury, shall be licensed by the state treasurer to sell his product to licensed dealers only, in quantities not below a specified minimum, and further that "any individual, firm or corporation, operating more than one brewery, shall pay for each separate brewery so operated" the license fee required by the act. Neither here nor elsewhere in the act is there express permission to operate more than one brewery. But such permission is necessarily implied in the requirement of the license fee for "each separate brewery" operated by any individual, firm or corporation; and, in law, what is thus implied is as much a part of the statute as what is expressed: Chester v. The Bank, 9 Pa. Superior Ct. 517. This provision is also in direct line with the like requirement in the first paragraph of the section, and the like effect must be given to it wherever it occurs. It is a familiar rule of construction that when the same language is used more than once in a statute, particularly in the same section, in relation to the same subject-matter, the presumption is that a uniform meaning is intended. In the sense in which the words "each separate brewery" are used in the latter part of this section, we have a legislative interpretation of the meaning intended by them, and their construction in the preceding part of the section is fixed by the meaning which the legislature has thus clearly given them. As they unquestionably authorize the state treasurer to issue more than one brewery license to the same person, they must be understood as also authorizing the court of quarter sessions to grant more than one. The act neither expressly nor impliedly forbids the holding at the same time of a license from the state treasurer and a license from the court. If both may be legally held, it cannot be material which is first obtained; and in such case an interest in the business conducted under the former is no bar to the latter. If they cannot be thus held, the brewer who receives a license from the court forfeits it by taking a license from the treasurer. The legislature certainly could not have

intended to impose such a penalty for an act which it expressly authorized. Construing the act of 1897 as authorizing the same person to hold both licenses, it substantially abolishes the prohibition implied in the act of 1891; leaving, indeed, but the merest shred of it, since the great bulk of sales is to licensed dealers. To construe these acts as permitting an applicant to receive a license from the court, while conducting business under as many treasurer's licenses as he may choose to take out, but forbidding him a second license by the court on the ground of interest in a business conducted elsewhere, is an adherence to shadow rather than substance.

Thus our conclusion is (1) that an interest in a brewery is not within the purview of the clauses of the petition required by the act of 1891 relative to other places where liquors "are sold or kept for sale;" (2) that however these clauses may be construed, the act of 1897 authorizes the grant of more than one brewery license to the same person by the court of quarter sessions, and to this extent repeals them if they are inconsistent with this provision of the latter act.

The contention that the act of 1897 takes away the jurisdiction of the quarter sessions in the granting of brewery licenses, and vests it wholly in the state treasurer, is without foundation. The acts of 1887 and 1891 expressly declare that "licenses shall be granted only by the court of quarter sessions of the proper county." This jurisdiction can be taken away only by express terms or necessary implication. There is nothing in the terms of the act of 1897, or in any implication arising from them, which can be construed as taking it away. The two acts differ materially as to procedure, and radically as to the scope of the license to be granted. The authority given the state treasurer, by the act of 1897, to issue a qualified license, cannot be viewed as a repeal of the act of 1891 as to brewers; it operates rather in the nature of a proviso, and leaves unaffected the jurisdiction given to the quarter sessions by the act of 1891.

The legislature having authorized the incorporation of the applicant in this case, with the right to engage in the business of brewing, and to purchase and hold property for that purpose, its business methods are beyond our consideration. While a business of limited scope is authorized by the state treasurer's license, it is better for the community that the granting of

192    PITTS. BREWING CO.'S BREWER'S LICENSE.

Opinion of the Court—Dissenting Opinion.    [12 Pa. Superior Ct.

licenses for a business not thus restricted should be under the control of the courts. No good reason appears why two or more breweries, which may be conducted by different persons, should not be conducted by the same person. No public interest, requiring the intervention of the police power, is in any way affected by a single ownership. If, however, the operation of thirteen breweries by one company, instead of by thirteen individuals or companies, shall prove injurious to the public, it is for the legislature to apply a remedy. The courts cannot on this ground refuse the license provided by law for the business which the applicant is by law authorized to conduct.

Judgment affirmed.

BEAVER and W. W. PORTER, JJ., concur in the foregoing opinion.

ORLADY, J., dissenting:

The Act of June 9, 1891, P. L. 257, prescribes just what is required of an applicant for a brewer's license to authorize the court of quarter sessions to grant it, and no subsequent legislation has relieved the applicant of any of these statutory requirements. It is entitled " An act to restrain and regulate the sale of vinous and spirituous, malt and brewed liquors or any admixtures thereof by wholesale," and it is not material whether the applicant is an individual, a copartnership or a corporation. The proceeding is begun by and founded upon a petition which, by section 11 of the act, must be verified by the affidavit of the applicant, and if any false statement is wilfully made in any part of said petition the applicant shall be deemed guilty of the crime of perjury, and upon indictment and conviction shall be subject to its penalties. The sixth and seventh clauses of section 4 present an absolute bar to the granting of more than one brewer's license to a single person in one county by the court of quarter sessions, and when one such license has been granted by the court to one person, a partnership or a corporation, the authority of the court is fully expended. For it is not to be supposed that the legislature intended to authorize the court to grant him an additional license for another place, when to obtain it he must swear to a falsehood. The express mention of the instances in which interest in the profits or business con-

ducted at another place shall not debar the applicant from obtaining a license for the place mentioned in his application forbids the implication that the statements might not be modified in other instances.   If the court below had authority to grant more than one brewer's license to this applicant, the thirteen licenses for these thirteen breweries could just as reasonably have been granted under a single petition.   If licenses for more than one brewery are desired by this applicant, there is ample provision made therefor by the Act of June 21, 1897, P. L. 176, which provides that any brewer of malt or brewed liquors may secure a certificate, which is equivalent to a license, to sell and deliver the product of his brewery to liquor dealers who are licensed by the court, without being hampered by the restrictions as to the affidavit to the petition in the act of 1891; and without limitation as to the number of licenses, the location of the breweries, the character or fitness of the applicant, or his interest in other like establishments; and without any oath of the applicant being required.   That the act of June 21, 1897, was not intended to repeal the provisions of the act of 1891 is manifest by section 2, viz: "Nothing in this act shall be so construed as to prohibit the brewer obtaining a license to sell at wholesale, as provided by existing law, upon application to the court of quarter sessions: provided, however, when the court shall have refused a license for any particular brewery, the sale of said liquors at said brewery shall not be permitted under this act until the expiration of one year after the date of the application for the license which has been refused."   The Act of July 30, 1897, P. L. 464, is in its principal features a revenue act, and the amount of the license fee to be paid by "all wholesale dealers, brewers, distillers, rectifiers, compounders, bottlers, storekeepers and agents, having stores or offices in this commonwealth" is to be ascertained by a classification based on the annual production of the breweries and distilleries, and the location of the other dealers, places of business in cities of the first, second or third class, or in boroughs or townships. It is not suggested in any of these acts that when a person owns or operates more than one brewery in a county, licenses therefor shall be obtained from the court; the license to be granted by the court is always mentioned as a single license. It is specially provided by the act of July 30, 1897, that it shall

not be construed so as to in any manner repeal or conflict with the act of June 21, 1897, "except that the amount to be paid to the state treasurer shall not be less than the amount required to be paid under the brewers' classification act," and by section 2, that each person or persons licensed by the proper court shall in addition to the license fee fixed by law pay, for the use of the commonwealth, an annual license tax in accordance with a schedule therein given.    By the 4th section of the act the 1st section of the act of 1891 is expressly repealed, but the same provisions, in the same words, and with the addition of "bottlers" and "for the use of the commonwealth" are re-enacted in section 1 of the act, but a different mode of classification is therein provided.

It is apparent that the act of 1891 was considered when the two acts of 1897 were framed, and as applications for brewers' licenses could be filed under the act of 1891 by the same applicant for different breweries, in several counties of the commonwealth, it was perfectly proper to say that the applicant should pay a certain annual license fee "for each separate brewery."

These words in the act of 1891 can be given effect without annulling or even qualifying the explicit provisions of the sixth and seventh clauses of section 4.

The several provisions indicate that the three acts were intended to be integral parts of a system, to be so administered, and that the acts of 1897 were not intended to repeal any of the jurisdictional provisions of the former law of 1891.    Granting for the sake of the argument that the legislature intended by the latter act to amend the earlier act so as to permit a brewer having, for example, two breweries in the same county to take out a state treasurer's license for one and to apply to the court of quarter sessions for a license for the other, it does not necessarily nor logically follow that the restrictions of the act of 1891 have been wholly removed.    Taking this view, but without deciding the point, the acts read as a connected whole are reasonably to be construed to mean that when an applicant for a general brewer's license under the act of 1891 held or was entitled to a state treasurer's limited license under the act of June 21, 1897, it therefore became necessary to modify the statements in the petition under the earlier act, so as to ex-

plain the pecuniary interest the applicant had in other property which at that time was entitled to a qualified license under another act of assembly; and this may be done. In this respect, possibly, the act of 1897 modified the act of 1891, but did not repeal it. The aim of the act of 1891 is thus preserved, restraining and regulating the sale by wholesale of malt and brewed liquors under the license granted by the court, and the purpose of the revenue legislation of 1897 is accomplished in having paid into the state treasurer's hands $1,000 or more for each separate brewery making sales to "liquor dealers licensed by the court." It is well settled that the leaning of all courts is strongly against repealing the positive provisions of a former statute by implication. There must be such a manifest and total repugnance that the two enactments cannot stand. It is not enough that there is discrepancy between different parts of a system of legislation on the same general subject; there must be a conflict between different acts on the same specific subject. An earlier statute is repealed in those particulars only wherein it is clearly inconsistent and irreconcilable with the latter enactment: Com. v. DeCamp, 177 Pa. 112.

I do not think there is such a positive repugnancy between these acts as to justify us in holding that the requirements of the sixth, seventh and eleventh clauses of the fourth section of the act of 1891 are repealed by implication by the acts of 1897; such a conclusion is never favored, and is adopted when the intention to repeal is clearly manifest and in extreme cases only. This is not such a case.

I am authorized to say that Judges RICE and BEEBER concur in the foregoing opinion.